1  LINDA CLAXTON, CA Bar No. 125729
   linda.claxton@ogletree.com
2  OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
3  400 South Hope Street, Suite 1200
   Los Angeles, CA 90071
4  Telephone: 213-239-9800
   Facsimile: 213-239-9045
5
6  Attorneys for Defendant
   REXEL USA, INC.
7

8              UNITED STATES DISTRICT COURT
9             SOUTHERN DISTRICT OF CALIFORNIA
10

11 RAOUL MIRANDA, as an individual          Case No. **'24CV1044 JO    MSB**
   and on behalf of all other similarly
12 situated class members,                  **DEFENDANT REXEL USA, INC.'S
                                            NOTICE OF REMOVAL OF CIVIL
13              Plaintiff,                  ACTION TO UNITED STATES
                                            DISTRICT COURT**
14       v.
                                            [Filed concurrently with Civil Cover
15 REXEL USA, INC., a Delaware              Sheet; Certification of Interested Parties
   corporation; and DOES 1-100,             and Disclosure Statement; Notice of
16 inclusive,                               Related Cases; Notice of Party with
                                            Financial Interest Declarations of
17              Defendants.                 Jonathan Plotkin; Linda Claxton in
                                            Support of Removal]
18

19                                          Complaint Filed: May 15, 2024
                                            Trial Date:      None
20                                          District Judge:  Hon. _____
                                                             Courtroom __, _____
21                                          Magistrate Judge: Hon. _____
22                                                           Courtroom __, _____

23
24
25
26
27
28

                                    1                    Case No. _____
          DEFENDANT REXEL USA, INC.'S NOTICE OF REMOVAL
          OF CIVIL ACTION TO UNITED STATES DISTRICT COURT
                                                      62704727.v1-OGLETREE

TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF RAOUL MIRANDA AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant Rexel USA, Inc. ("Rexel" or "Defendant"), through its undersigned counsel, hereby removes the above-captioned action from the Superior Court for the County of San Diego to the United States District Court for the Southern District of California in accord with 28 U.S.C. §§ 1332(d), 1441, and 1446. The grounds for removal are as follows:

I.   BACKGROUND

1.   On May 15, 2024, plaintiff Raoul Miranda ("Plaintiff"), on behalf of himself and a proposed putative class, filed the lawsuit entitled *Miranda v. Rexel USA, Inc.*, Case No. 37-2024-00022544-CU-OE-CTL, against Rexel USA, Inc. ("Rexel") and "DOES 1 through 10" in the Superior Court for the County of San Dieego.

2.   Plaintiff served the Complaint on Rexel on May 17, 2024. Declaration of Linda Claxton ("Claxton Decl.") ¶ 3. In accordance with 28 U.S.C. § 1446(a), true and correct copies of "all process, pleadings, and orders" served on Rexel in this action are attached to the Claxton Declaration as **Exhibit A**.

3.   The Complaint asserts class action claims for: (1) Recovery of Unpaid Minimum Wages and Liquidated Damages; (2) Recovery of Unpaid Overtime Wages; (3) Failure to Provide Meal Periods or Compensation in Lieu Thereof; (4) Failure to Provide Rest Periods or Compensation in Lieu Thereof; (5) Failure to Furnish Accurate Itemized Wage Statements; (6) Failure to Timely Pay All Wages Due Upon Separation of Employment; (7) Failure to Reimburse Business Expenses and (8) Unfair Competition.

4.   As set forth more fully below, based on the allegations of the Complaint and other evidence collected by Rexel, this Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C § 1332(d). Therefore, this action may be removed to this Court, pursuant to 28 U.S.C. § 1441.

5.     In accordance with 28 U.S.C. § 1446(d), Rexel will promptly serve this notice of removal on Plaintiff's counsel and file a copy with the clerk of the Superior Court for the County of San Diego.

## II.     PROCEDURAL GROUNDS FOR REMOVAL ARE SATISFIED.

6.     Removal is timely, as this Notice is filed within thirty (30) days of Rexel being served with the summons and complaint.  28 U.S.C. § 1446(b).

7.     Under 28 U.S.C. §§ 84(c) and 1441(a), venue is proper in the United States District Court for the Southern District of California because this Court embraces the Superior Court for the County of San Diego, where this action was pending.

8.     Rexel filed its Answer to Plaintiff's Complaint in San Diego County Superior Court on June 13, 2024.  A copy of Rexel's Answer filed in the Superior Court is attached to the Claxton Declaration as **Exhibit B**.  Rexel is not aware of any further proceedings or filings regarding this action in that court.  Rexel need not secure consent from the "Doe" defendants prior to removal. 28 U.S.C. § 1453(b) ("[S]uch action may be removed by any defendant without the consent of all defendants."); *see, e.g.*, *United Comput. Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002) (explaining that the consent requirement "does not apply to" "unknown" parties).

9.     The removing party need only provide a "short and plain statement of the grounds for removal" and need not submit evidence unless and until the opposing party challenges the factual allegations in the notice of removal.  *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81 (2014); *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("[A] removing defendant's notice of removal 'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements." (citation omitted)).

## III.     THIS COURT HAS JURISDICTION OVER THIS ACTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT.

10.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §

1332(d), which grants federal district courts jurisdiction over putative class actions with more than 100 class members where the aggregate amount in controversy exceeds $5 million and any member of the class of plaintiffs is a citizen of a state different from any defendant. As set forth below, this action satisfies each of the requirements of Section 1332(d)(2) for original jurisdiction under CAFA.

11.   Support for CAFA jurisdiction in this action is based both on the allegations of the Complaint and Rexel's investigation of its business records.[1] *See Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1123 (9th Cir. 2013) (A defendant "may remove to federal court when it discovers, based on its own investigation, that a case is removable.").

A.   **This Is A Covered Class Action.**

12.   This action meets CAFA's definition of a class action, which is "any civil action filed under Fed. R. Civ. P. 23 or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. §§ 1332(d)(1)(B), 1435(a) & (b). Plaintiff purports to bring this action on behalf of himself "and all others similarly situated as a class action pursuant to Code of Civil Procedure section 382," alleges that "The proposed Class is ascertainable as members can be identified and located using information in DEFENDANTS' business, payroll and personnel records," and identifies a putative class of "All current and former non-exempt employees that worked either directly or via a staffing agency for any one or more of the DEFENDANTS at any location in California at any time within the four years prior to the filing of the initial Complaint ("Class Period")" Compl. ¶ 15.

---

[1] In making its good faith calculations of the size of the purported class and the amounts-in-controversy being sought by the Complaint, Rexel does not concede or admit, in any fashion, that any claims for such amount, or any amounts, have legal or factual merit, or that the persons on behalf of which such claims are asserted could properly be certified as members of a class under Fed. R. Civ. P. 23, and reserves all rights and defenses to such claims.

4

Case No. _____
DEFENDANT REXEL USA, INC.'S NOTICE OF REMOVAL
OF CIVIL ACTION TO UNITED STATES DISTRICT COURT
62704727.v1-OGLETREE

### B. The Proposed Class Exceeds 100 Members.

13. Plaintiff seeks to represent "All current and former non-exempt employees that worked either directly or via a staffing agency for any one or more of the DEFENDANTS at any location in California at any time within the four years prior to the filing of the initial Complaint ("Class Period")"  Compl. ¶ 15.

14. Assuming that the putative class, as defined by Plaintiff's Complaint, comprises all non-exempt, hourly-paid employees employed by Rexel in California at any time from May 15, 2020 to the present, the putative class includes at least 764 persons.  Declaration of Linda Claxton ("Claxton Decl.") ¶ 9.  Accordingly, for purposes of removal, the aggregate number of putative class members as defined by the Complaint is greater than 100 persons, as required by 28 U.S.C. § 1332 (d)(5)(B).

### C. The Parties Are Minimally Diverse.

15. The minimal diversity requirement of 28 U.S.C. § 1332(d) is met in this action because the citizen of at least one class member is diverse from the citizenship of at least one defendant.  28 U.S.C. § 1332(d)(2)(A).

16. Plaintiff, a putative class member, is a citizen of California.

17. "[A] corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  28 U.S.C. § 1332(c)(1); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010) (explaining what constitutes a corporation's principal place of business).  Rexel was at the time of the filing of this action, and still is, incorporated under the laws of the State of Delaware.  Plotkin Decl. ¶ 3.  Rexel's corporate offices are located at 5429 Lyndon B Johnson Fwy, Suite 600, Dallas, Texas 75240.  Plotkin Decl. ¶ 4

18. The offices of Rexel's executive officers are located primarily in Dallas, Texas, Shelton, Connecticut, and Beaverton, Oregon.  Plotkin Decl. ¶ 5.  No executive officers are located in California.  *Id*.

19. Based on the respective locations of Rexel's executive officers, corporate decisions are made either individually, or as a management team via their respective

work locations, which are primarily in Dallas, Texas, Shelton, Connecticut, or Beaverton, Oregon. Plotkin Decl. ¶ 6

20. Based on the respective locations of Rexel's executive officers, crucial day-to-day operations and administrative functions such as legal, tax, human resources, payroll are located primarily in Dallas, Texas, Shelton, Connecticut, or Beaverton, Oregon. Plotkin Decl. ¶ 7.

21. Because Rexel is incorporated in the State of Delaware, with its principal place of business in Dallas, Texas, under 28 U.S.C. § 1332(c)(1), Rexel is a citizen of Delaware and Texas.

22. Minimal diversity is established because Plaintiff is a citizen of California and Rexel is not; Rexel is a citizen of Delaware and Texas; and the remaining purported defendants (Platt Electric Supply, Inc., Rexel, Inc. and Platt Electric Supply) do not exist as separate legal entities as explained above. Removal is therefore proper under 28 U.S.C. § 1332(d). *Serrano v. 180 Connect Inc.*, 478 F.3d 1018, 1019 (9th Cir. 2007).

### D. The Aggregate Amount In Controversy Exceeds $5 Million.

23. Under CAFA, the claims of the individual class members are aggregated to determine if the amount in controversy exceeds the required "sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2), (d)(6); *see also Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006). The amount in controversy "is simply an estimate of the total amount in dispute, not a prospective assessment of the defendant's liability." *Lewis v. Verizon Commc'ns., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin*, 574 U.S. at 89. To determine the amount in controversy, the Court must assume that the allegations in the operative pleading are true and that a jury will return a verdict for the plaintiff on all such claims. *See Cain v. Hartford Life & Accident Ins. Co.*, 890 F. Supp. 2d 1246, 1249 (C.D. Cal. 2012)

("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe.") (emphasis and internal quotation marks omitted).

24.  Plaintiff does not specifically plead the amount of damages claimed. Where this is the case, a defendant need only make a *prima facie* showing that it is more likely than not that the amount in controversy exceeds $5 million. *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997). "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what defendant will actually owe." *Korn v. Polo Ralph Lauren Corp.,* 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (emphasis omitted).  A "removing defendant is not obligated to 'research, state, and prove plaintiff's claims for damages.'" *Id.* at 1204-05 (emphasis omitted).  Defendant may rely on "reasonable assumptions" in calculating the amount in controversy for removal purposes.  *Arias*, 936 F.3d at 922.  Furthermore, in cases where statutory penalties are sought, as is the case here, "district courts…of California have looked to the statutory maximum…in determining whether the jurisdictional requirements of CAFA have been met." *Korn,* 536 F. Supp. 2d at 1205.

25.  "[I]n wage-and-hour cases, the amount in controversy turns on the frequency of the alleged violations of California labor laws." *Hayes v. Salt & Straw, LLC*, 2020 WL 2745244, at *3 (C.D. Cal. May 27, 2020).  If the complaint is ambiguous, as here, defendants are entitled to make reasonable assumptions concerning the number of violations.  *See, e.g.*, *Arias*, 936 F.3d at 922.  An assumed violation rate of one violation per week is frequently considered reasonable where the plaintiff alleges a pattern and practice of conduct.  *E.g.*, *Soto v. Tech Packaging, Inc.*, 2019 WL 6492245, at *5 (C.D. Cal. Dec. 3, 2019) (noting that "other courts within the Ninth Circuit have accepted a rate of one violation per work week as an acceptable basis for calculating the amount in controversy" and accepting same); *Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403, at *7 (C.D. Cal. May 9, 2018) (same); *Arreola v. Finish Line*, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) ("Where. .

. the plaintiff pleads that an employer has a regular or consistent practice of violating employment laws. . . such an allegation supports a defendant's assumptions that every employee experienced at least one violation once per week."); *Jasso v. Money Mart Express, Inc.*, 2012 WL 699465, at *5 (N.D. Cal. Mar. 1, 2012) ("Given the allegations. . . that the violations took place 'at all material times,' one violation per week on each claimed basis is a sensible reading of the alleged amount in controversy, as pleaded by Plaintiff.").

26. Based on Plaintiff's allegations in the Complaint, evidence collected by Rexel, and Rexel's reasonable assumptions concerning violations derived from the allegations in the Complaint, the aggregate amount in controversy from the putative class allegations satisfies the jurisdictional threshold. *See Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) (finding in wage and hour class action that defendant established amount in controversy by a preponderance of the evidence where defendant's calculations "were relatively conservative, made in good faith, and based on evidence wherever possible"). The Complaint seeks unpaid minimum and overtime wages, other unpaid wages for missed meals and rest breaks, penalties for non-compliant wage statements, untimely payment of wages both during employment and after termination, unpaid reimbursement of business-related expenses, failure to keep records, general, special, consequential, and liquidated damages, civil and statutory penalties, restitution, disgorgement of profits, injunctive relief, and reasonable attorneys' fees on ten causes of action brought under a multitude of different labor statutes for each member of the putative class. *See* Compl. at page 33 ("Prayer for Relief").

27. Conservatively, Rexel estimates that Plaintiff's Complaint places at least the following amounts in controversy:

- Unpaid meal period premiums (third cause of action): **$2,362,202**
- Unpaid rest period premiums (fourth cause of action): **$2,362,202**
- Non-compliant wage statements (fifth cause of action): **$3,060,050**

- Final wages not timely paid (sixth cause of action): **$1,271,693**
- **Estimated amount in controversy: $9,056,147**
- Estimated attorneys' fees (25%): **$2,264,036.75**
- **Total estimated amount in controversy: $11,320,183.80**

1. <u>Plaintiff's Third Cause of Action for Unpaid Meal Period Premiums Places At Least $2,362,202 In Controversy.</u>

28. Plaintiff's Third Cause of Action seeks premium wages for Rexel's alleged failure to provide timely, uninterrupted meal periods, schedule second meal periods on days that employees worked more than ten hours, or pay required meal period premiums. Compl. ¶¶ 100-107. Plaintiff alleges: "PLAINTIFF and other Class Members were consistently unable to take timely, off duty, thirty-minute, uninterrupted first and second meal periods, often being forced to take late meal periods, interrupted meal periods, and/or work through part or all of their meal periods due to understaffing, the nature and constraints of their job duties, and/or commentary from supervisors pressuring them to take non-compliant meal periods or skip meal periods completely." Compl. ¶ 103. Plaintiff also alleges that Rexel "… also failed to pay premiums for missed/otherwise unlawful meal periods in violation of California law and/or failed to pay the proper meal period premium for failure to incorporate all non-discretionary remuneration including but not limited to, bonuses, shift differential pay and/or other non-discretionary compensation into the regular rate or compensation for purposes of calculating the owed meal period premium." Compl. ¶ 107. Consequently, Plaintiff alleges that "PLAINTIFF and the Class Members are entitled to one additional hour's pay at the employee's regular rate of compensation for each day a meal period was missed, late, interrupted, or otherwise unlawful … " Compl. ¶ 108.

29. Plaintiff further alleges that the failure to provide meal period premiums alleged in the Third Cause of Action constitutes unlawful business acts and practices within the meaning of Business and Professions Code Section 17200. Compl. ¶ 145.

The statute of limitations for such a claim is four years. Cal. Bus. & Prof. Code § 17208 ("Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued"); *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 178-179 (2000) (the four-year statute of limitations applies to any UCL claim, notwithstanding that the underlying claims have shorter statutes of limitation).

30. The Complaint does not allege the number of meal periods not provided to Plaintiff or the proposed class members between May 15, 2020 to the present for which premium pay is allegedly due. Rather, Plaintiff alleges that "PLAINTIFF and other Class Members were consistently unable to take timely, off duty, thirty-minute, uninterrupted first and second meal periods, often being forced to take late meal periods, interrupted meal periods, and/or work through part or all of their meal periods due to understaffing, the nature and constraints of their job duties, and/or commentary from supervisors pressuring them to take non-compliant meal periods or skip meal periods completely." Compl. ¶ 103.

31. Based on a review of Defendant's business records, at least 764 putative class members worked at least 91,845 weeks between May 15, 2020 and May 26, 2024, and received a average base hourly rate of $25.72. (Claxton Decl. ¶ 9).

32. Assuming, *arguendo*, the truth of Plaintiff's allegations that "PLAINTIFF and other Class Members were consistently unable to take timely, off duty, thirty-minute, uninterrupted first and second meal periods, often being forced to take late meal periods, interrupted meal periods, and/or work through part or all of their meal periods due to understaffing, the nature and constraints of their job duties, and/or commentary from supervisors pressuring them to take non-compliant meal periods or skip meal periods completely" and that Rexel "… also failed to pay premiums for missed/otherwise unlawful meal periods in violation of California law and/or failed to pay the proper meal period premium for failure to incorporate all non-discretionary remuneration including but not limited to, bonuses, shift differential pay

and/or other non-discretionary compensation into the regular rate or compensation for purposes of calculating the owed meal period premium." Compl. ¶¶ 103, 107, putative class members are entitled to recover at least $2,362,202 for unpaid meal period premium pay, assuming a conservative twenty (20%) violation rate: $25.72 (average base hourly rate for putative class members during the four-year period) x 91,845 work weeks x 20% (assumed violation rate) = $2,362,202.

33. The foregoing meal period calculations assume a violation rate of 20% which is well within the range of up to 50-60% generally accepted by this Court as a reasonable conservative assumption when calculating the amount in controversy for CAFA purposes. *See, e.g., Stanley v. Distribution Alts., Inc.*, No. EDCV172173AGKKX, 2017 WL 6209822, at *2 (C.D. Cal., Dec. 7, 2017) (accepting assumed violation rates of "three missed rest breaks, and three missed meal breaks per week" where the complaint offered no guidance as to the frequency of the alleged violations); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (60% violation rate was "conservative"); *Oda v. Gucci Am., Inc.*, 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015) (violation rate of 50%); *Mendoza v. Savage Servs. Corp.*, No. 219CV00122RGKMAA, 2019 WL 1260629, at *2 (C.D. Cal., Mar. 19, 2019) (holding in a case involving the same Plaintiffs' counsel that California district courts "routinely apply a 20% violation rate—that is, one missed meal and rest period per work week—for meal and rest period premiums"); *Mortley v. Express Pipe & Supply Co.*, No. SACV 17-1938-JLS-JDE, 2018 WL 708115, at *4 (C.D. Cal., Feb. 5, 2018) (finding defendant's assumption that class members missed two meal periods and two rest periods each per week based on allegations of "a company-wide policy and/or practice of understaffing" was reasonable). Courts have even found that a plaintiff's allegation of uniform practices alone can be sufficient to permit a defendant to assume that violations of wage laws occurred 100% of the time. *See e.g., Amaya v. Consolidated Container Co.*, LP, 2015 WL 4574909, *2 (C.D. Cal. July 28, 2015) (allegation of "uniform" illegal practices, combined with no evidence from plaintiff rebutting an

assumed 100% violation rate, sufficient proof of violation rates); *Buehler v. Saddle Creek Corp.*, 2015 WL 5618871, *2 (C.D. Cal. September 23, 2015), (holding "[v]iolation rates of 100% may not be patently unreasonable in the event that a plaintiff fails to include fact-specific allegations that would result in a violation rate discernibly smaller than 100%."); *Sanchez v. Russell Sigler, Inc.*, 2015 WL 1276539, at *6 (C.D. Cal. Apr. 28, 2015) (100 percent).

34. Thus, Plaintiff's Third Cause of Action places *at least* **$2,362,202** in controversy.

### 2. Plaintiff's Fourth Cause of Action For Unpaid Rest Period Premiums Places At Least $2,362,202 In Controversy.

35. Plaintiff's Fourth Cause of Action seeks premium wages for Rexel's alleged failure to provide rest breaks or pay rest break premiums for missed rest breaks. Compl. ¶¶ 109-116. Plaintiff alleges: "PLAINTIFF and the Class Members did not receive legally compliant, timely 10-minute rest periods for every four (4) hours worked or major fraction thereof. As explained above, any purported rest periods were late, interrupted, cut short, on duty, and/or otherwise subject to DEFENDANTS' control due to the nature and constraints of Class Members' job duties, understaffing, and/or commentary from supervisors pressuring PLAINTIFF and Class Members to skip rest periods completely or otherwise take non-compliant rest periods. Based on information and belief, DEFENDANTS implemented policies and/or practices that failed to relieve PLAINTIFF and other Class Members of all duties and employer control during rest periods. Based on further information and belief, Class Members were pressured to complete their work duties according to a designated schedule such that rest periods were only taken once tasks were completed, and/or as time permitted. As a result, PLAINTIFF and Class Members did not receive legally compliant first, second, or third rest periods as required by California law." Compl. ¶¶ 113-115. He also alleges that Rexel failed to pay one hour of wages at the appropriate regular rate of pay for any rest period that was not provided. Compl. ¶ 116. Consequently, Plaintiff

alleges that, under California Labor Code sections 226.7(c), he and the proposed class members are entitled to one additional hour of compensation, at each employee's regular rate of pay, for each work day "a required rest period was not provided." Compl. ¶ 117.

36. As with meal periods, Plaintiff further alleges that the failure to provide rest period premiums alleged in the Fourth Cause of Action constitutes unlawful business acts and practices within the meaning of Business and Professions Code Section 17200. Compl. ¶ 145. The statute of limitations for such a claim is four years. Cal. Bus. & Prof. Code § 17208 ("Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued"); *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 178-179 (2000) (the four-year statute of limitations applies to any UCL claim, notwithstanding that the underlying claims have shorter statutes of limitation).

37. The Complaint does not allege the number of meal periods not provided to Plaintiff or the proposed class members between May 15, 2020 to the present for which premium pay is allegedly due. Rather, Plaintiff alleges that "PLAINTIFF and the Class Members did not receive legally compliant, timely 10-minute rest periods for every four (4) hours worked or major fraction thereof. As explained above, any purported rest periods were late, interrupted, cut short, on duty, and/or otherwise subject to DEFENDANTS' control due to the nature and constraints of Class Members' job duties, understaffing, and/or commentary from supervisors pressuring PLAINTIFF and Class Members to skip rest periods completely or otherwise take non-compliant rest periods." Compl. ¶ 113.

38. Based on a review of Defendant's business records, at least 764 putative class members worked at least 91,845 weeks between May 15, 2020 and May 26, 2024, and received a average base hourly rate of $25.72. (Claxton Decl. ¶ 9).

39. Assuming, *arguendo*, the truth of Plaintiff's allegations that "PLAINTIFF and the Class Members did not receive legally compliant, timely 10-

minute rest periods for every four (4) hours worked or major fraction thereof. As explained above, any purported rest periods were late, interrupted, cut short, on duty, and/or otherwise subject to DEFENDANTS' control due to the nature and constraints of Class Members' job duties, understaffing, and/or commentary from supervisors pressuring PLAINTIFF and Class Members to skip rest periods completely or otherwise take non-compliant rest periods" ( Compl. ¶ 113),  putative class members are entitled to recover at least $2,362,202 for unpaid rest period premium pay, assuming a conservative one rest break missed per week (ten percent (10%) violation rate): $25.72 (average base hourly rate for putative class members during the four-year period) x 91,845 (work weeks worked by putative class during the applicable four-year period) = $2,362,202.

40. The foregoing calculation assumes less than the conservative 20% violation rate used for the meal period premiums calculation above, which as discussed, is well within the range of violation rates approved by California district courts for a CAFA removal.

41. Thus, Plaintiff's Fourth Cause of Action places *at least* **$2,362,202** in controversy.

       3.    <u>Plaintiff's Fifth Cause of Action For Non-Compliant Wage Statements Places Approximately $3,060,050 In Controversy.</u>

42. Plaintiff's Fifth Cause of Action seeks penalties under California Labor Code Section 226(a) for failure to furnish complete and accurate wage statements. Compl. ¶¶ 118-131. Specifically, Plaintiff alleges that Rexel "knowingly and intentionally failed to provide PLAINTIFF and Class Members with accurate, itemized wage statements." Compl. ¶ 127.

43. As a result, Plaintiff alleges that he and the proposed class members are entitled to recover "the full amount of penalties due under Section 226(e), reasonable attorneys' fees, and costs of suit.") Compl. ¶ 131. The applicable penalty is $50 for

the initial pay period in which a violation occurs and $100 for each subsequent violation, up to a maximum aggregate penalty of $4,000. Cal. Lab. Code § 226(e).

44. The applicable statute of limitations for a claim seeking Labor Code section 226(e) penalties is one year (from May 15, 2023 to the present). Cal. Civ. Proc. Code § 340(a).

45. The Complaint does not allege the number of violations that occurred between May 15, 2023 and the present. Plaintiff alleges that the wage statement deficiencies include, but are not limited to the failure "to list all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee …" *See* Compl. ¶ 126.

46. If Plaintiff's allegations are true, then all wage statements issued from May 15, 2023 to the present were deficient. *Koreisz*, 2018 WL 6567694, at *6 (finding "reasonable" defendant's assumption that "all wage statements would not accurately reflect Plaintiff and the class members' compensation" based on broad allegations); *Korn,* 536 F. Supp. 2d at 1205 (court may assume maximum statutory penalty for the purpose of calculating amount in controversy).

47. Based on a review of Rexel's business records, at least 631 non-exempt employees worked for Rexel in California from May 15, 2023 to May 26, 2024. Claxton Decl. ¶ 9. Because Rexel pays its employees bi-weekly, it issued approximately 12,814 wage statements during this time period. Plotkin Decl. ¶ 9; Claxton Decl. ¶ 9. Assuming that all wage statements were deficient, Rexel would owe Plaintiffs and the potential class members $3,060,050 in potential statutory penalties.[2]

48. This does not exceed the maximum aggregate statutory penalty of $4,000 per employee for the relevant one-year time period. Since the statute states that the appropriate award is the greater of actual damages or the aggregate penalty per

---

[2] *See, e.g., Lucas*, 2018 WL 2146403, at *8 (calculating penalties under Section 226(e)).

employee, the "maximum aggregate penalty is a potential *floor* on the amount in controversy for this claim," not the maximum amount recoverable under Labor Code section 226(e). *Graham v. IFCO Sys. N.A., Inc.*, 2017 WL 1243498, at *9 (C.D. Cal. Mar. 3, 2017) (emphasis added).

49. Thus, Plaintiff's Fifth Cause of Action places at least **$3,060,050** in controversy.

### 4. Plaintiff's Sixth Cause of Action For Final Wages Not Timely Paid Places Approximately $1,271,693 In Controversy.

50. Plaintiff's Sixth Cause of Action seeks penalties under California Labor Code § 203 for failure to timely pay wages due at termination. Compl. ¶¶ 132-136. Specifically, Plaintiff alleges that Rexel "failed and continue[s] to fail to timely pay final wages to PLAINTIFF and Class Members upon separation of employment in violation of Labor Code section 201-202. Moreover, final paychecks once provided to PLAINTIFF and Class Members do not include all wages owed as they are devoid of, including but not limited to, all owed minimum wages, overtime wages, premium wages, vacation pay, and all owed sick leave and/or paid time off wages at the properly accrued rates." Compl. ¶ 87. Plaintiff's Complaint alleges that these wages owed include "overtime and minimum wages and meal and rest period premiums." Compl. ¶ 135.

51. As a result, Plaintiff alleges that he and the proposed class members are entitled to recover penalties pursuant to California Labor Code § 203. Compl. ¶ 136. An employer that willfully fails to pay all wages due at termination within the required time is subject to a penalty whereby the employee's wages continue to accrue for up to 30 days from the due date until back wages are paid or an action is commenced. Cal. Lab. Code § 203.

52. The applicable statute of limitations for a claim seeking Labor Code section 203 penalties is three years (from May 15, 2021 to the present). Cal. Lab. Code § 203; Cal. Civ. Proc. Code § 338.

53. The Complaint does not allege the number of violations that occurred between May 15, 2021 and the present. Instead, Plaintiff relies on his other allegations to support his claim that he and the potential class members did not receive all wages owed to them upon termination. *See* Compl. ¶ 135. If Plaintiff's other claims are found to be true, all class members terminated more than thirty (30) days ago are entitled to 30 days' waiting period wages under Labor Code section 203.

54. Plaintiff also claims that he "worked over eight (8) hours a day, and/or forty (40) hours in a week and that he and other potential class members did the same and were not paid for all of their time worked. *See* Compl. ¶¶ 17, 35. Therefore, it is reasonable to assume that potential class members are each owed 240 hours of additional compensation at their hourly rate of pay – the equivalent of 30 days' of full time work. *See Soto v. Tech Packaging, Inc.*, 2019 WL 6492245, at *8 (finding "reasonable" defendant's assumption that putative class members did not receive final wages for the full 30-day period under which penalties may accrue."); *Long v. Destination Maternity Corp.*, 2016 WL 1604968, at *9 (S.D. Cal. Apr. 21, 2016) (finding that Defendant's assumption that final wages went unpaid for the full thirty days is reasonable where plaintiff alleges that defendant failed to pay final wages and still had not paid plaintiff all wages).

55. Based on a review of Rexel's business records, 228 nonexempt employees in California had their employment terminated from May 15, 2021 to May 26, 2024 with a average hourly rate of pay of $25.72. Claxton Decl. ¶ 9).

56. Assuming, arguendo, the truth of Plaintiff's allegations, and assuming conservatively that each of the terminated putative class members did not receive at least one (1) fully complaint meal or rest break during the entire tenure of their employment and were not paid meal or rest period premium pay in lieu thereof, the terminated putative class members are entitled to recover at least $1,271,693 in waiting time penalties: $25.72 (average base hourly rate) x 240 (30 days' hours of full time

employment) x 228 (number of putative class members terminated during three-year period) = $1,271,693.

57. Thus, Plaintiff's Sixth Cause of Action places approximately **$1,271,693** in controversy.

### 5. Plaintiff's Prayer for Attorney's Fees Places an Additional $2,264,036.75 In Controversy.

58. Plaintiff seeks attorneys' fees on behalf of the putative class. Compl. ¶¶ 108, 117, 131, and 176 & at page 33 ("Prayer for Relief"). Attorneys' fees are properly included in the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy.").

59. While it is not a bright line rule that the amount of attorneys' fees in controversy is 25% of all other alleged recovery, *Fritsch v. Swift Transp. Co. of Ariz. LLC*, 899 F.3d 785, 796 (9th Cir. 2018), courts routinely accept 25% as a reasonable benchmark of attorneys' fees for calculating the amount in controversy. *See, e.g., Ramirez v. Benihana Nat'l Corp.*, 2019 WL 131843, *2 (N.D. Cal. Jan. 8, 2019) (applying 25% benchmark post-*Fritsch* because no factors "reflect a departure from such benchmark is warranted"); *Altamirano v. Shaw Indus., Inc.*, 2013 WL 2950600, at *13 (N.D. Cal. June 14, 2013) ("[T]he Ninth Circuit has recognized this percentage [25% of the total amount in controversy] as reasonable."); *see also Lucas*, 2018 WL 2146403, at *12 (collecting cases in which 25% benchmark for attorneys' fees was applied).

60. Accordingly, including attorneys' fees of 25% of the amount in controversy is reasonable for estimating the total amount in controversy. *See, e.g., Jasso*, 2012 WL 699465, at *6-7 (holding that "it was not unreasonable for [Defendant] to rely on" an "assumption about the attorneys' recovery as a percentage of the total amount in controversy" and noting that "it is well established that the Ninth

Circuit 'has established 25% of the common fund as a benchmark award for attorney fees.'").

61. As it stands, the total amount in controversy as calculated in Paragraphs 28 through 56 above is *at least* **$9, 056,147**.

62. At a 25% estimated rate, Plaintiff's prayer for attorneys' fees therefore adds *at least* **$2,264,036.75** to the amount in controversy.

63. Including attorneys' fees brings the total amount in controversy to **$11,320,183.80**, easily exceeding the $5 million threshold required to establish this Court's jurisdiction under CAFA.

### 6. Summary

64. Based on Plaintiff's allegations, the amount in controversy is at least $**11,320,183.807**. Even excluding Plaintiff's other claims, including unpaid wages, wages not timely paid during employment, failure to keep requisite payroll records, and unreimbursed business expenses, the Complaint easily satisfies the $5 million threshold.

### E. No Exception Applies to Defeat CAFA Jurisdiction.

65. Neither CAFA's "local controversy" nor its "home state" exceptions apply to this case. For the home state exception to apply, all primary defendants must be citizens of the state in which the case is filed. 28 U.S.C. § 1332(d)(B); *see also Corsino v. Perkins*, 2010 WL 317418, at *5 (C.D. Cal. Jan. 19, 2010). Similarly, for the local controversy exception to apply, at least one defendant must be a citizen of California, and that defendant's conduct must form a significant basis for the claims asserted by the proposed plaintiff class. 28 U.S.C. § 1332(d)(4)(i)(II). Rexel is not a citizen of California, so neither exception applies.

## IV. RESERVATIONS OF RIGHTS.

66. By removing this matter, Rexel does not waive and, to the contrary, reserves any rights it may have, including, without limitation, all available arguments and affirmative defenses. Rexel does not concede that class certification is appropriate

or that Plaintiff is entitled to any recovery whatsoever. Should the Court or opposing counsel request additional information, evidence, and/or calculations to demonstrate that this Action places at least $5 million in controversy, Rexel reserves the right to refine the methodologies used here and calculate the amount in controversy with greater precision, which may significantly increase the result. In the event that Plaintiff files a request to remand, or the Court considers remand sua sponte, Rexel respectfully requests the opportunity to submit additional argument and/or evidence in support of removal.

## V. CONCLUSION

WHEREFORE, Defendant Rexel USA, Inc. respectfully requests that its Notice of Removal be deemed good and sufficient and for this Court to exercise subject matter jurisdiction over this removed action.

DATED: June 17, 2024

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ Linda Claxton
Linda Claxton

Attorneys for Defendant
REXEL USA, INC.